IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

| | | |
|---|---|---|
| FRIENDS OF EUDORA PUBLIC SCHOOL DISTRICT OF CHICOT COUNTY, ARKANSAS; DAVID GREEN; JUANITA BURTON; HENRY COOK; PAULINE DAVIS; and ROBERT THOMAS; | * * * * * * | |
| Plaintiffs, | * * | |
| vs. | * * | No. 5:06CV0044 SWW |
| MIKE BEEBE, in his official capacity, as Governor of the State of Arkansas; KENNETH JAMES, in his official capacity as Director of the Arkansas Department of Education; CALVIN KING; BEN MAYS; SHELBY HILLMAN; DIANE TATUM; NACCAMAN WILLIAMS; RANDY LAWSON; JEANNA WESTMORELAND; SHERRY BURROW; MARYJANE REBICK; STATE OF ARKANSAS; LAKESIDE SCHOOL DISTRICT; JOYCE L. VAUGHT, In her official capacity as Superintendent of Lakeside School District; | * * * * * * * * * * * * * * * | |
| Defendants. | * | |

**Memorandum Opinion and Order**

Before the Court are defendants' motions to dismiss plaintiffs' complaint to which plaintiffs responded. For the reasons stated below, the Court finds the motions to dismiss should be granted.

**Background**

Plaintiffs describe themselves as residents of the former Eudora School District of Chicot County, Arkansas ("District"), and either taxpayers with or without children attending school in the District, "patrons" of the District, parents of children attending school in the District, or

members of the local Board of the District.  They filed this action on February 24, 2006, apparently in response to the February 13, 2006, decision of the Arkansas State Board of Education ("ASBE") to annex the District to the Lakeside School District of Chicot County.

In March 2005, the Arkansas Department of Education ("ADE") identified the predominantly black District as being in "fiscal distress" pursuant to Ark.Code Ann. § 6-20-1904.  The District appealed that designation, but on April 11, 2005, the ASBE denied the appeal and classified the District as being in fiscal distress.  On February 13, 2006, the ASBE issued an order annexing the District to the Lakeside School District.  According to the allegations of the complaint, Lakeside is a predominantly white school district.  Under Ark. Code Ann. § 6-13-1410, plaintiffs could appeal the decision to the Circuit Court of Pulaski County, Arkansas pursuant to the Arkansas Administrative Procedures Act, Ark. Code Ann. §25-15-201 *et seq.*  There is no indication plaintiffs appealed the decision.

Plaintiffs sue the Governor of Arkansas, the Director of the State Board of Education, and the State Board of Education and its members, all in their official capacities ("State defendants").  Plaintiffs also name as defendants the Lakeside School District and the Superintendent of the Lakeside School District, in her official capacity ("Lakeside defendants").  Plaintiffs set forth in approximately 100 paragraphs various allegations and causes of action under both state and federal law, including 42 U.S.C. §§ 1981, 1982, 1983, and 1973.  Compl. at ¶¶ 14-15.  While they do not state any specific state law causes of action, they contend Act 60 of 2003 of the Second Extraordinary Session of the General Assembly, codified at Ark. Code Ann. § 16-13-1602(a), is unconstitutional. Compl. at ¶ 3  They also assert Ark. Code Ann. § 6-220-1901 *et seq.* is unconstitutional,  ¶¶ 25-27; that the State does not have jurisdiction to effectuate

an annexation or consolidation of the District, ¶ 52; that the State Public School System Funding Formula is unconstitutional, ¶¶ 63-67; that the annexation of the District violates the 1965 Federal Voting Rights Act, ¶¶ 75-76; that the implementation of Act 59 allows the State to discriminate against plaintiffs, ¶ 77; that Amendment 74 of the Arkansas Constitution violates the Fourteenth Amendment of the United States Constitution, ¶¶ 85, 89; and that the ASBE did not follow state law or its own regulations when it made the decision to annex the District, ¶¶ 98-101.  Plaintiffs seek declaratory and injunctive relief as well as compensatory damages.

In the motions now before the Court, defendants seek dismissal of plaintiffs' complaint pursuant to Fed.R.Civ.P. 12(b)(1), lack of subject matter jurisdiction, and 12(b)(6), failure to state a claim.[1]

### Standard of Review

A motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure may challenge the factual truthfulness or the facial sufficiency of the plaintiff's jurisdictional allegations. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993).  Therefore, in deciding a Rule 12(b)(1) motion, the Court must distinguish between a "facial attack" and a "factual attack."  *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990).  Where a defendant makes a "facial attack" to jurisdiction, the Court limits its review to

---

[1] The State defendants filed a motion to dismiss on March 27, 2006, and the Lakeside defendants filed their motions to dismiss on April 10, 2006.  Plaintiffs responded, and on September 1, 2006, the Court abstained from further action in light of on-going proceedings before the Arkansas Supreme Court in *Lake View Sch. Dist. No. 25 v. Huckabee*, 220 S.W.3d 645 (Ark. 2005). On May 31, 2007, the Arkansas Supreme Court issued the mandate, *see Lake View Sch. Dist. No. 25 v. Huckabee,* 370 Ark. 139, __ S.W.3d ___ (2007), and on June 29, 2007, plaintiffs moved to reopen the case and set it for trial.  Defendants renewed their motions to dismiss filed in 2006, and in October 2007, the Court reopened the case and denied without prejudice the motions to dismiss. *See* docket entry 43.

the face of the pleadings, similar to the review conducted under Rule 12(b)(6). Where a defendant makes a "factual attack" to jurisdiction, the Court may consider matters outside the pleadings without converting the motion to dismiss into one for summary judgment. *Id.* at 729; Fed. R. Civ. P. 56. In a factual attack the Court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. . . . [N]o presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude a trial court from evaluating for itself the merits of jurisdictional claims." *Osborn*, 918 F.2d at 730 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). The plaintiff bears the burden of proving that jurisdiction does in fact exist. *Id.*

In considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), all facts alleged in the complaint are assumed to be true. *Doe v. Northwest Bank Minn., N.A.*, 107 F.3d 1297, 1303-04 (8th Cir. 1997). The complaint should be reviewed in the light most favorable to the plaintiff, *McMorrow v. Little*, 109 F.3d 432, 434 (8th Cir. 1997), and should not be dismissed if there are pled "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007). A motion to dismiss is not a device for testing the truth of what is asserted or for determining whether the plaintiff has any evidence to back up what is in the complaint. *ACLU Foundation of Southern California v. Barr*, 952 F.2d 457, 467 (D.C.Cir. 1991). The issue is not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims, irrespective of a judge's disbelief of a complaint's factual allegations or a judge's belief that the plaintiff cannot prove what the complaint asserts. *Id.*

## Discussion

Defendants assert plaintiffs' damage claims; claims under § § 1981, 1982, and 1983; state law claims; and claims against the Governor are barred by sovereign immunity; that there is no justiciable case or controversy as to plaintiffs' claims for relief as to Acts 59 and 60; and that plaintiffs' claims are barred by the *Rooker-Feldman* doctrine and the doctrine of *res judicata*. Defendants further argue plaintiffs fail to state a cause of action as to their claims under the Voting Rights Act, the Fifth, Fourteenth, and Fifteen Amendments.

**1.     Sovereign Immunity**

The doctrine of sovereign immunity, also known as Eleventh Amendment immunity, deprives federal courts of jurisdiction over lawsuits brought by private citizens against states[2] unless the state has waived its immunity or Congress has abrogated the state's immunity under a valid exercise of Congressional power. The State of Arkansas and its agencies have not consented to be sued in the federal courts, and Congress did not abrogate the states' sovereign immunity when it enacted 42 U.S.C. § § 1981, 1982, and 1983. *See Quern v. Jordan,* 440 U.S. 332, 345 (1979) ( § 1983 does not abrogate a state's Eleventh Amendment immunity); *Bakhtiari v. Lutz,* 507 F.3d 1132, 1138 (8th Cir. 2007)(plaintiff's claims for relief under § § 1981 and 1983 against defendants in their official capacities are barred); *Singletary v. Mo. Dep't of Corrections,* 423 F.3d 886, 890 (8th Cir. 2005)( § 1981 claims barred).[3] The Court finds that plaintiffs' claims brought pursuant to 42 U.S.C. §§ 1981, 1982, and 1983 must be dismissed.

---

[2] Official capacity claims against the individual defendants are, in fact, suits against the state of Arkansas. *See Edelman v. Jordan,* 415 U.S. 651, 663 (1974)(suits against state officials in their official capacities are suits against the state).

[3] Because the operative language of both § 1981 and § 1982 is traceable to the Civil Rights Act of 1866, they are generally construed the same. *See Tillman v. Wheaton-Haven Recreation Ass'n,* 410 U.S. 431 (1973).

The Eleventh Amendment also bars suits in federal court "by private parties seeking to impose a liability which must be paid from public funds in the state treasury." *Edelman v. Jordan,* 415 U.S. 651, 663 (1974). Therefore, plaintiffs' damages claims are barred by sovereign immunity. With respect to plaintiffs' state law claims, the Eleventh Amendment "bars federal court jurisdiction over state law claims against unconsenting states or state officials when the state is the real party in interest, regardless of the remedy sought. This constitutional bar applies with equal force to pendent state law claims." *Cooper v. St. Cloud State Univ.*, 226 F.3d 964, 968 (8th Cir. 2000).

Under the doctrine set forth in *Ex Parte Young,* 209 U.S. 123 (1908), state officials may be sued in their official capacities for prospective injunctive relief without violating the Eleventh Amendment. However, to be a proper defendant under *Ex Parte Young,* plaintiffs would have to plead and prove that a state official threatened and is about to commence proceedings to enforce against parties affected an unconstitutional act and that the official has a special relation to the particular statute alleged to be unconstitutional or is expressly directed to see to its enforcement. 209 U.S. at 155-7.

Plaintiffs argue the ASBE has a special relationship to the enforcement of the annexation statute and that the Governor, as Chief Executive Officer of the State, is a necessary party. Although the Governor is the Chief Executive of the State, the Governor's duty to generally administer state law is insufficient to make him a proper defendant under *Ex Parte Young.* Acts 59 and 60 do not give the Governor any role in the annexation or consolidation process, and there is no allegation he played any role in the ASBE's decision. While the members of the ASBE played a role in the annexation decision, they are not connected with the enforcement of

the law in question. Because the Governor and ASBE members are not proper defendants under *Ex Parte Young* and no other exception to sovereign immunity applies, plaintiffs' §§ 1981, 1982, and 1983 claims against them should be dismissed.

**2.      Case or Controversy**

Plaintiffs' complaint seeks declaratory and injunctive relief regarding Acts 59 and 60. These claims present no justiciable controversy. Specifically, plaintiffs' Act 59 claims are moot, and the Act 60 claims are barred for lack of standing. Act 59 established the major portion of the State's "funding formula" for public school districts for the 2004-05 school year, which ended on June 30, 2005. Accordingly, plaintiffs' claims for prospective declaratory and injunctive relief as to Act 59 are moot.

Plaintiffs lack standing to challenge the provisions of Act 60. To establish Article III standing, a plaintiff must show (1) injury in fact, (2) a causal connection between that injury and the challenged conduct, and (3) the likelihood that a favorable decision by the court will redress the alleged injury. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561. Plaintiffs' complaint and the exhibits referenced therein clearly establish that the District's annexation occurred pursuant to the fiscal distress statutes - not Act 60. Because plaintiffs have not alleged and cannot otherwise establish that they have been injured by Acts 59 or 60, and because they have not alleged that they are likely to be impacted in the future by the operation of these Acts, plaintiffs lack standing to challenge their provisions.

**3.      Rooker-Feldman and *Res Judicata***

Defendants assert plaintiffs' claims are barred either by the *Rooker-Feldman* doctrine or the principles of *res judicata* because they have already been litigated in state court. Plaintiffs concede that they were plaintiffs in the long-running state-court litigation challenging the constitutionality of Arkansas's public school system, known as the *Lake View* case.[4] However, they say their specific claims regarding the constitutionality of Acts 59 and 60 could not have been raised in the original *Lake View* case because the Acts did not exist. They further point out that during a hearing in this matter in August 2005, the State defendants admitted that Act 60 was "not on the table" in state court. Pls.' Resp. to Mot. Dismiss, Ex. F.

In *Lake View*, the plaintiff class included "all public school districts in the State of Arkansas; all students and parents of students in all public school districts in the State of Arkansas; all members of the Board of Directors of all public school districts in the State of Arkansas; and all taxpayers, regardless of residence or domiciles, who have paid taxes which were levied for the purpose of supporting public schools in the State of Arkansas." *See* State Defs.' Mot. Dismiss, Ex. A.

In response to the Arkansas Supreme Court's 2002 *Lake View* decision, the 84th Arkansas General Assembly passed a number of education reform measures during its 2003 Regular and Second Extraordinary Sessions, including Acts 59 and 60. The plaintiffs were parties in the state-court litigation culminating in the Arkansas Supreme Court's appointment of Special Masters, the submission of the Special Masters' Report, and the Arkansas Supreme Court's June 18, 2004, decision to relinquish jurisdiction over the case. *See Lake View Sch. Dist. No. 25 v. Huckabee,* 189 S.W.3d 1 (Ark. 2004).

---

[4] *See* docket entry no. 43 at n.4 for a history of the case.

Defendants argue it is plain from the Arkansas Supreme Court's decision that all of the legislative acts passed after the Supreme Court's 2002 opinion were open for scrutiny and challenge to any party, and it is also plain that the District, as part of the plaintiff class, had a full and fair opportunity to, and in fact did, attack the validity of Acts 59 and 60 before the Special Masters and, again before the Arkansas Supreme Court.  *See* State Defs.' Mot. Dismiss, Ex. B; *Lake View Sch. Dist. No. 25 v. Huckabee,* 189 S.W.3d 1 (Ark. 2004).  The Arkansas Supreme Court, however, did not grant the class any relief with regard to those Acts, and dismissed the case, allowing the mandate to issue.  *Lake View,* 189 S.W.3d 1.

The *Rooker-Feldman* doctrine derives its name from two cases-- *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983), which revived a doctrine of federal court jurisdiction established by *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923).  Under the doctrine,  federal courts lack subject matter jurisdiction to entertain claims which would in essence cause them to engage in appellate review of prior state court decisions.  *Postma v. First Federal Savings and Loan,* 74 F.3d 160, 162 (8th Cir. 1996).  *See also Ballinger v. Culotta,* 322 F.3d 546, 548 (8th Cir. 2003)(lower federal courts lack subject matter jurisdiction over challenges to state court judgments); *Williams v. McKenzie,* 834 F.2d 152, 153 (8th Cir. 1987)(federal courts are not empowered to review state court proceedings even if a federal claim has been asserted therein).  The *Rooker-Feldman* doctrine is confined to "cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280 (2005).

9

*Rooker-Feldman* requires a federal court to examine the claims asserted or the relief sought to determine if the court is basically being asked to rule that a state court order or judgment was in error. Impermissible federal appellate review can occur even though state and federal claims are not identical if the federal court is being asked to rule on issues which are "inextricably intertwined" with a state court determination. If a federal claim can succeed only to the extent that a state court wrongly decided issues before it, the federal court lacks subject matter jurisdiction over such claim. *Keene Corp. v. Cass,* 908 F.2d 293, 296-7 (8th Cir. 1990); *In re Ferren,* 203 F.3d 559 (8th Cir. 2000).

The Court finds plaintiffs' claims are inextricably intertwined with those brought before the Arkansas Supreme Court in *Lake View* because their success in this lawsuit would void the determination by the Arkansas Supreme Court that the State's public education system is constitutional. In 2004, the *Lake View* class specifically objected to the Masters' Report on the basis that it failed to conclude that "Act 60 violates voting rights laws and cases by diluting representation" and "violates equal protection because it fails to provide for the orderly transfer or retention of personnel." State Defs.' Mot. Dismiss, Ex. B. Plaintiffs further requested that the Arkansas Legislature be "ordered to reconvene in special session within 45 days and repeal Act 60 as unconstitutional and a violation of equal protection and voting rights." *Id.*

Plaintiffs' claims attacking the constitutionality of Acts 59 and 60 were raised, briefed, and rejected by the Arkansas Supreme Court in its June 2004 decision. *See Lake View,* 189 S.W.3d at 14-15. The Arkansas Supreme Court concluded that the Acts passed by the General Assembly in 2003, including Acts 59 and 60, adequately addressed the Arkansas Supreme Court's November 2002, decision with respect to the constitutionality of the State's public

education system. *Id.* The Arkansas Supreme Court's determination that the State's public education system was constitutional was premised upon the conclusion that Act 60's administrative consolidation was not only lawful, but necessary for the State to meet its constitutional obligations with regard to the State's public education system. *Id.* at 10-16.

The *Rooker-Feldman* doctrine precludes federal district court jurisdiction only if the federal suit is commenced after the state court proceedings. *Exxon Mobil Corp., supra,* 544 U.S. 280, 284 (2005). Plaintiffs' federal lawsuit was filed on February 24, 2006, two years after the Arkansas Supreme Court rendered its decision rejecting the claims asserted by plaintiffs in the suit before the Court. *See Lake View Sch. Dist. No. 25 v. Huckabee,* 189 S.W.3d 1, 3 (Ark. 2004). Although the Supreme Court later withdrew its final mandate and the *Lake View* litigation continued for another three years in order to address all of the other issues raised by plaintiffs pertaining to the State's public education system, plaintiffs' constitutional arguments regarding Acts 59 and 60 and administrative annexation and consolidation of Arkansas school districts were not revisited by any party or the Arkansas Supreme Court. *See Lake View Sch. District No. 25 v. Huckabee,* 370 Ark. 139, ___S.W.3d ___ ( 2007); *Lake View Sch. Dist. v. Huckabee,* 368 Ark. 231, ___ S.W.3d ___  (2006); *Lake View Sch. Dist. v. Huckabee,* 220 S.W.3d 645 (Ark. 2005).

*Rooker-Feldman* does not require a "final" state-court judgment on the merits to preclude jurisdiction. The Eighth Circuit has explained that *Rooker-Feldman* is broader than claim and issue preclusion in this regard. *See Charchenko v. City of Stillwater,* 47 F.3d 981, 983 n.1 (8th Cir. 1995). The *Rooker-Feldman* doctrine applies to attempted appeals of both "final" state court orders and state court orders that are "interlocutory" or otherwise not "final." *In re*

*Goetzman,* 91 F.3d 1173 (8th Cir. 1996), *cert. denied,* 519 U.S. 1042 (1996). "Application of the *Rooker-Feldman* doctrine does not depend on a final judgment on the merits of an issue . . . nor is there a procedural due process exception to the doctrine." *Id.* The Court finds the *Rooker-Feldman* doctrine precludes plaintiffs from bringing claims in federal court to overturn the Arkansas Supreme Court's decision in *Lake View.*

Defendants further argue plaintiffs' claims are barred by the doctrine of *res judicata.* "Res judicata precludes the relitigation of a claim on grounds that were raised or might have been raised in a prior action. Res judicata consists of two preclusion concepts-issue preclusion and claim preclusion." *Klipsch, Inc. v. WWR Tech., Inc.,* 127 F.3d 729, 733 (8th Cir. 1997). "The claim preclusion aspect of res judicata . . . provides that 'a final judgment on the merits bars further claims by parties or their privies based on the same cause of action.'" *Id.* "The test applied to determine whether res judicata bars litigation of a claim is: (1) whether the prior judgment was rendered by a court of competent jurisdiction; (2) whether the judgment was a final judgment on the merits; and (3) whether the same causes of action and same parties or their privies were involved in both cases." *Gurley v. Hunt.* 287 F.3d 728, 731 (8th Cir. 2002). "If the three elements are met, the parties are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.' " *Lundquist v. Rice Mem'l Hosp.,* 238 F.3d 975, 977 (8th Cir. 2001).

Defendants contend that almost every aspect of the State's public education system, including the constitutionality of Acts 59 and 60, was comprehensively litigated by the parties and intensely scrutinized by the Special Masters. They argue that even if the Court finds those

claims were not specifically litigated during the *Lake View* proceedings, they could have and properly should have been raised in that matter.  The Court finds the record indicates plaintiffs, as part of the class which filed the *Lake View* lawsuit in state court and who were represented by the same attorneys, raised the issues of the constitutionality of Acts 59 and 60 during the *Lake View* proceedings.

**4.     Failure to State a Claim**

**a.  Voting Rights Act**

Plaintiffs allege that the annexation of the District violated the Voting Rights Act ("VRA") because it diluted the voting strength of the black citizens of Eudora, Arkansas. Defendants move for dismissal under Fed.R.Civ.P. 12(b)(6), arguing plaintiffs are not proper parties, they have no standing to assert a violation, and they fail to state a valid cause of action.

The VRA prohibits a "State or political subdivision" from engaging in any practices which deny or abridge a person's right to vote on the basis of race.  Title 42 United States Code section 1973(c)(2) defines "political subdivision" as "any county or parish, except that where registration for voting is not conducted under the supervision of a county or parish, the term shall include any other subdivision of a State which conducts registration for voting."  Defendants do not fall within the meaning of this definition.  *See African-American Citizens for Change v. Robbins,* 825 F.Supp. 885, 891 (E.D.Mo. 1993), *aff'd,* 24 F.3d 1052 (8th Cir. 1994) (Board of Police Commissioners and its members do not fall within the definition of "political subdivision" as provided for in the VRA).

Under the Supreme Court's prudential standing rules, a litigant's complaint must comply with Article III of the Constitution and fall "within the zone of interests protected by the law

involved." *Allen v. Wright,* 468 U.S. 737, 751 (1984). To meet the "zone of interests" test, the court must examine whether "the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth v. Seldin,* 422 U.S. 490, 500 (1975).

Plaintiffs complain that the annexation will "dilute" their vote and leave them with less influence over the board that will govern the new-formed larger school district than they had over the smaller, majority black District. The general desire to preserve "local control" or to preserve the status quo of a political subdivision of a community is not a concern that falls within the "zone of interests" that the VRA was intended to protect. In fact, Section 2 of the VRA does not require local school boards to be elected at all. *See e.g., Mixon v. Ohio,* 193 F.3d 389 (6th Cir. 1999)(VRA does not prohibit appointed, rather than elected, school boards); *Moore v. Sch. Reform Bd. of Detroit,* 147 F.Supp.2d 679 (E.D.Mich.2000), *aff'd*, 293 F.3d 352 (6th Cir.), *cert. denied* (2003)(state statute establishing new appointed rather than elected school board did not violate VRA); *see also Sailors v. Bd. of Educ. of Kent County,* 387 U.S. 105, 110-11 (1967) (no constitutional impediment to appointing, rather than electing, officers of nonlegislative character). There is no "fundamental" constitutional or other right to maintain "local control" of school districts or to maintain or preserve the identity of a school district or community. *Mirrione v. Anderson,* 717 F.2d 743, 744, 746 (2nd Cir. 1983), *cert. denied,* 465 U.S. 1036 (1984). The Court finds plaintiffs do not have standing under the VRA. The Court finds plaintiffs fail to state a claim under the VRA.

**b. Fourteenth Amendment Due Process**

Plaintiffs allege their due process rights were violated because they were not afforded a proper hearing before the District was dissolved and there is an "unconstitutional symbiotic relationship" between the "Director" of the ADE and the ASBE. Compl. at ¶¶ 30-37.

The Fourteenth Amendment guarantees that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." Plaintiffs have no right or property interest to control the State's public education system in their district. The control of the public schools is a State matter, delegated and lodged in the State Legislature by the Arkansas Constitution. *See* Ark. Const. amend. 4, § 1. School districts, as political subdivisions of the State, cannot invoke the protection of the Fourteenth Amendment as against the State itself. *See Delta Special Sch. Dist. No. 5 v. State Bd. of Educ.*, 745 F.2d 532 (8th Cir.1984). To the extent plaintiffs seek to invoke the "rights" of the District, they do not state a claim upon which relief can be granted.

With regard to plaintiffs' contention that the ADE Commissioner's relationship with the ASBE violates due process, the United States Supreme Court explained in *Withrow v. Larkin*, 421 U.S. 35, 47 (1975):

> The contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication has a much more difficult burden of persuasion to carry. It must overcome a presumption of honesty and integrity in those serving as adjudicators; and it must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.

*See also Marler v. Mo. State Bd. of Optometry,* 102 F.3d 1453, 1457 (8th Cir. 1996)(mere statement of personal belief that Board members acted out of personal spite and animosity fails

to overcome presumption of tribunal's integrity).  Plaintiffs' complaint does not present the requisite circumstances outlined by the Supreme Court in *Withrow*.

Further, the procedural component of the due process clause provides only that a party be given notice and an opportunity for a hearing at a meaningful time and in a meaningful manner. *See Armstrong v. Manzo,* 380 U.S. 545, 552 (1965).  The record reflects that sufficient process was afforded.  Moreover, the ASBE's order advised that the District could further appeal the decision under Ark. Code Ann. § 6-13-1410 to the Pulaski County Circuit Court of Arkansas, pursuant to the Arkansas Administrative Procedure Act, Ark. Code Ann. § 6-13-1410.  There is no allegation that plaintiffs exercised the right to appeal or were otherwise denied the right to appeal.  Therefore, any due process claim challenging the fiscal distress classification of the District or its subsequent annexation has been waived.  *See Hroch v. Omaha,* 4 F.3d 693, 695-6 (8th Cir. 1993).

To the extent plaintiffs are alleging a substantive due process violation, their claim is without merit because they have not pled facts which establish that defendants' conduct violated the Supreme Court's rigorous "shocks the conscience" standard for such violation.  *See, e.g. Terrell v. Larson,* 396 F.3d 975, 980-1 (8th Cir. 2005).

**c.  Fourteenth or Fifteenth Equal Protection**

Plaintiffs contend that Acts 59 and 60, on their face, violate their right to equal protection under the Fourteenth Amendment.  Classifications that do not involve a fundamental right or a suspect class are subject to a rational basis test.  *Carter v. Arkansas*, 392 F.3d 965, 968 (8th Cir. 2004).  Under that test, it is permissible to treat classes of people differently if the legislation is rationally related to a legitimate state purpose.  *Id.*  Plaintiffs appear to assert that the Acts

16

violate their right to equal protection because they deprive them of their elected representatives (Compl. at ¶ ¶ 74-75); treat them differently than other school districts on account of their race (Compl. at ¶ ¶ 79-89); and are calculated "to foster the complete annihilation of all African-American School Districts" (Compl. at ¶ 90).

The Supreme Court has determined that education is not a fundamental right. *See San Antonio Indep. Sch. Dist. v. Rodriguez,* 411 U.S. 1, 33-37 (1973). Therefore, its regulation is subject to rational review basis. *Id.* There is no fundamental right to vote for members of a school board, "even if other cities in the state may do so." *Mixon,* 193 F.3d at 403.

A review of the Acts reveal that they are racially neutral on their face. Act 59 provided per-pupil funding of $5,400 as the base-level foundation amount. *See Lake View,* 189 S.W.3d at 6. There is no distinction made on the basis of race or ethnicity. *Id.* Act 60 is also valid on its face. It applies to all school districts with enrollments below 350 regardless of racial composition. Ark. Code Ann. § 6-13-1602. Because plaintiffs allege no facts to support their conclusory allegations of purposeful discrimination and their claims do not otherwise involve a fundamental right, their federal equal protection claims are subject to a rational basis review.

Under this review, a court must reject an equal protection challenge to a statutory classification "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Carter,* 392 F.3d at 968 (internal quotation omitted). "A legislative choice . . . may be based on rational speculation unsupported by evidence or empirical data." *Id.* (internal quotation omitted). The Court finds there is a rational basis for the Acts challenged by the plaintiffs. The legislative findings of Act 59 explain that its purpose is to establish a suitable and efficient system of public education in compliance with the mandates of the Arkansas

Supreme Court in *Lake View v. Huckabee,* 91 S.W.3d 472 (Ark. 2002). The express legislative purpose of Act 60 is to "ensure the delivery of an equal opportunity for an adequate education to the people of Arkansas in an efficient and effective manner."

Plaintiffs do not elaborate on the nature of their Fifteenth Amendment claim beyond stating that a violation has occurred. However, a statute that is racially neutral on its face violates the Fifteenth Amendment only if it is motivated by a discriminatory purpose. *Mobile v. Bolden,* 446 U.S. 55 (1980). Because the challenged Acts are facially neutral and plaintiffs fail to state facts establishing a discriminatory purpose, plaintiffs' claims under the Fifteenth Amendment must also be dismissed.

### d. Fifth Amendment

Plaintiffs' Fifth Amendment claim is brought under the Just Compensation Clause, which provides: "[N]or shall private property be taken for public use, without just compensation." United States Const. Amend. V. Plaintiffs cite and the Court finds no authority for the proposition that a former school district's assets are the private property of its local taxpayers, students, parents or board members. Therefore, plaintiffs fail to state a cause of action under the Fifth Amendment. or taxpayers. Even if plaintiffs had stated a valid Fifth Amendment claim, federal courts are barred from considering the merits of a takings claim until a private litigant exhausts state remedies. *Williamson Co. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172 (1985). Plaintiffs make no allegation they have exhausted their state court remedies. Therefore, their Fifth Amendment claims should be dismissed.

## Conclusion

IT IS THEREFORE ORDERED that the motions to dismiss [docket entries 46 and 48] are hereby granted. Plaintiffs' complaint is dismissed.[5]

DATED this 25th of March 2008.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE

---

[5] Plaintiffs' motion to consolidate [docket entry 55] is denied. *See* docket entry 85 in *Friends of Lakeview Sch.Dist. Inc. No. 25 v. Huckabee,* Case No.2:04CV184 WRW.